# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| KATHY B. LANDRY | : | DOCKET NO. 05-2185 |
| --- | --- | --- |
| VS. | : | JUDGE MINALDI |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds as follows:

## BACKGROUND

Kathy B. Landry protectively filed the instant application for Supplemental Security Income payments on November 5, 2003. (Tr. 78-82). She alleged an inability to work since November 1, 2002, due to back surgery and leg numbness. (Tr. 79, 86). The claim was denied at the initial level of the administrative process. (Tr. 63-67). Thereafter, Landry requested, and received a July 19, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 25-62). In an August 25, 2005, written decision, the ALJ determined that Landry was not disabled under the Act, finding at Step Five of the sequential evaluation process that she retained the residual functional capacity to make an adjustment to work which exists in significant numbers in the national economy. (Tr. 13-22). Landry appealed the adverse decision to the Appeals Council.

However, on November 15, 2005, the Appeals Council denied Landry's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On December 8, 2005, Landry petitioned this court to review the denial of benefits. She alleges the following errors:

(1) the ALJ erred in failing to find that Landry's impairments were not medically equivalent to a listing at Step Three of the sequential evaluation process;

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(3) the vocational expert testimony was unreliable; and

(4) the ALJ improperly used the medical-vocational guidelines as a framework for decision-making.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any

substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The Secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must prove that she cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1:**

The ALJ found at Step Two of the sequential evaluation process that Landry suffered from the following severe impairments: degenerative disc disease with residual musculoskeletal

pain and obesity. (Tr. 15, 21). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 15-16, 21).

Landry contends that the ALJ erred in failing to find that the limitations imposed by her impairments are equivalent to Listing 1.02B, 20 C.F.R. § 404, Subpart P, Appendix I. We agree. Social Security Ruling 02-1p states that,

> if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A.

SSR 02-1p.

The regulations, in turn, provide that to ambulate effectively, a claimant must be capable of sustaining a reasonable walking pace over a sufficient distance to carry out activities of daily living. 20 C.F.R. § 404, Subpart P, Appendix I, Listing 1.00B2b. The inability to walk without the use of a walker does not constitute effective ambulation. *Id*.

When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. § 416.926© (2006).[1] In the case *sub judice*, the ALJ relied on an October 1, 2003, Discharge Summary which stated *inter alia*, "motor intact." (Tr. 123-124). However, the Summary further stated that Landry suffered decreased sensation in the bilateral lower extremities, and that her reflexes were difficult to assess. *Id*. The

---

[1] The regulations formerly provided that medical equivalence was determined from medical evidence only. 20 C.F.R. § 416.926(b) (2006). However, the Commissioner recently explained that despite the change in the regulation, they have always interpreted "medical evidence" to include not just findings from medical sources, but also other information, including the claimant's own testimony. 71 FR 10431 (3/1/2006).

associated operative report indicated that Landry had been using a walker for several months. (Tr. 125-126). Indeed, the remainder of the record consistently reveals that Landry used a wheelchair or a walker until June or July, 2004. For instance, physician's notes from November 27, 2002, state that plaintiff was experiencing leg pain, numbness, and weakness. (Tr. 111). On December 2, 2002, Landry had decreased mobility. (Tr. 110). Progress notes from December 4, 2002, indicate that Landry suffered bilateral lower extremity weakness and numbness. (Tr. 106). She had decreased mobility getting out of bed, and was unable to stand due to numbness. *Id.* A wheelchair for home use was recommended. *Id.*

Physician's notes from April 1, 2003, indicate that Landry had suffered lower back pain, and bilateral lower extremity weakness for the past six months. (Tr. 145). The notes further stated that she was morbidly obese in a wheelchair. *Id.* She was diagnosed with lower back pain and weakness. *Id.* Records from May 28, 2003, state that plaintiff was ambulatory with a walker, and that she used a wheelchair. (Tr. 139). Medical records from June 30, 2003, report that Landry walked with a walker and suffered neuropathy of feet and legs. (Tr. 135).

The administrative record does not contain any pertinent medical records beyond October 2003.[2] The only evidence addressing when Landry ceased using her walker was her own testimony. She stated that she stopped using the walker in June or July 2004. (Tr. 34-35). From

---

[2] The record does contain a January 13, 2004, physical residual functional capacity assessment completed by a non-examining agency physician, Charles Lee, M.D. (Tr. 151-158, 63). He indicated that Landry could stand and/or walk for at least two hours in an eight hour day. *Id.* However, someone handwrote on the assessment form that "[p]er phone call," Landry used a walker, and that her statements appeared to be credible. (Tr. 156). To the extent that Dr. Lee's assessment can be read to imply that Landry did not need a walker, such a finding is inconsistent with the medical reports of record and cannot provide a basis for the ALJ's Step Three determination. *See*, *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoted source omitted).

5

that point on, there is no evidence that Landry continued to suffer ineffective ambulation, and thus her impairments would cease to medically equal Listing 1.02A. We must proceed with the remainder of the sequential evaluation for the period from July 2004, until November 29, 2004.

**<u>Issue 2</u>**:

The ALJ determined that Landry retained the residual functional capacity to perform sedentary work, with a sit/stand option, the ability to walk for four to eight hours in an eight hour workday, and limited pushing and pulling.[3]

Plaintiff argues that the ALJ failed to conduct a function-by-function analysis of all the strength demands of sedentary work. (SSR's 96-8p & 96-9p). However, the ALJ addressed Landry's ability to stand, walk, sit, lift, and perform postural activities. (Tr. 17). Moreover, the ALJ's determination is supported by the assessment of the non-examining agency physician, Charles Lee, M.D. (Tr. 151-158).[4]

Plaintiff contends that the ALJ should have obtained a consultative medical examination.

---

[3] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[4] There were some minor differences between the ALJ's determination and Dr. Lee's assessment. For example, Dr. Lee restricted Landry's ability to climb on ladders, ropes and scaffolding. *Id.* He also limited all exposure to hazardous machinery and heights. *Id.* However, these restrictions do not significantly impact the capacity for sedentary work. *See*, SSR 96-9p. Thus, any error by the ALJ in failing to incorporate these limitations in his residual functional capacity determination was harmless. *See, Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)(citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).

Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. §404.1517. However, the ALJ need not order a consultative examination at government expense "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)(quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Here, the record contains an assessment of plaintiff's resulting limitations by a non-examining agency physician.

Moreover, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Plaintiff has not made the requisite showing.

Plaintiff next argues that the ALJ failed to properly consider her pain. We emphasize that pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision as to the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d

7

1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services*, 894 F.Supp. 279 (E.D. Tex. 8/3/1995)*;* (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa v. Sullivan, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R. §§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).

The instant ALJ considered Landry's complaints of pain. (Tr. 17-18). However, he found that Landry's allegations were not totally credible. (Tr. 21). Indeed, the record contains no medical documents beyond January 2004.[5] There are no medical opinions precluding sedentary work. Moreover, plaintiff reported that she could sit in a chair and sort and fold laundry for two to three hours every other day. (Tr. 94). She was able to read the Bible, newspaper, and historical romance novels. (Tr. 95). She visited friends each weekend for four to five hours. (Tr. 95). Landry also spent a couple of hours on the phone per day as President of the Calcasieu Parish Bus Drivers Association and Vice-President of Louisiana School Bus Operators Association. (Tr. 95). If Landry's pain was as intense and debilitating as claimed, then the foregoing daily activities would have been precluded.

Plaintiff next argues that the ALJ failed to consider the combined effect of her impairments. However, in his opinion, the ALJ specifically stated that he was considering all of plaintiff's symptoms, pain, and medically determinable impairments. (Tr. 15, 17).

Finally, plaintiff complains that the ALJ failed to address whether she could maintain

---

[5] During the hearing, Landry referenced an August 30, 2004, gastric bypass operation. (Tr. 31). However, there are no medical records supporting this testimony.

8

employment for a significant period of time. *See, Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). The Fifth Circuit has recently confirmed that remand for a determination of whether a claimant can maintain employment is not required where, as here: 1) the claimant did not assert that her condition would only periodically preclude her from working, and 2) did not offer medical evidence that her condition would intermittently prevent her from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed.Appx. 950, 2004 WL 1372922 (5th Cir. 2004)(unpubl.).[6]

In sum, the ALJ's residual functional capacity assessment is supported by substantial evidence.

**Issues 3-4**:

With the assistance of a vocational expert ("VE"), the ALJ concluded at Step Four of the sequential evaluation process that Landry was unable to return to her past relevant work. (Tr. 19). Accordingly, the ALJ proceeded to Step Five. At this step, the ALJ determined that Landry was a younger individual, with a high school education, and no transferrable skills. (Tr. 20-22).[7] Using the medical-vocational guidelines as a framework, the ALJ concluded that Landry was not disabled pursuant to Rule 201.28. *Id.* However, because Landry was unable to perform the full range of sedentary work, the ALJ relied on the testimony of a VE who opined that plaintiff would be capable of making an adjustment to perform other jobs that exist in significant numbers in the

---

[6] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

[7] Landry was 43 years old at the time of the decision. (Tr. 20).

national economy. *Id.*[8]

Plaintiff raised numerous challenges to the reliability of the VE's testimony. (*See*, Pl. Memo., pg. 26). Yet, any error in the VE's testimony is harmless, as the ALJ did not need to rely on the VE's testimony. Instead, the ALJ should have found plaintiff not disabled at Step Four of the sequential evaluation process.

Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing, Social Security Ruling 82-61). The ALJ relied on the VE's testimony that Landry could not perform past relevant work as a school bus driver because the Dictionary of Occupational Titles classified the job at the medium exertional level. (*See*, Tr. 52). However, Landry's past relevant work as a school bus driver *as she performed it*, is not precluded by her residual functional capacity. Landry described her work as a bus driver as requiring four hours of sitting, one hour of walking, one hour of climbing, and no stooping, kneeling, crouching, crawling, handling, or reaching. (Tr. 87-88).[9] The heaviest weight that she lifted was eight pounds. *Id.*[10] In other words, Landry performed her job as a school bus driver at the sedentary exertional level.

The only job requirement that potentially conflicts with plaintiff's residual functional

---

[8] The VE identified the following sample jobs: order clerk, telephone quotation clerk, and a ticket seller. (Tr. 54).

[9] Only up to two hours of sitting would be required at one time because the workday was divided into morning and afternoon shifts. (*See*, Tr. 38).

[10] Plaintiff also stated that a driver is technically supposed to get down on the ground and look under the bus during a pre-trip inspection. (Tr. 37-38). However, she did not know many drivers that do that. *Id.*

capacity is the need to climb (presumably onto the bus). (*See*, Tr. 38) However, plaintiff testified that her inability to climb lasted for only a "majority" of the two years, and was related to her lack of mobility. (Tr. 38-39). Thus, it stands to reason that Landry recovered her ability to climb when she ceased using her walker in July 2004.

In sum, Landry retained the residual functional capacity to perform her past relevant work as a bus driver, as she performed it, from July 2004, onwards.[11] Thus, the ALJ did not need to rely on the VE's testimony at Step Five. Indeed, expert testimony is not required when it is determined that a claimant can perform past relevant work at Step Four of the process. *See, Harper v. Sullivan,* 887 F.2d 92, 97 (5th Cir. 1989)(lack of expert testimony is irrelevant when the medical-vocational guidelines are inapplicable because a claimant is capable of performing past relevant work).

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be reversed and remanded with instructions to award benefits for a closed period from the earliest eligibility date (the month following the November 5, 2003, application date) until June 30, 2004.[12]

IT IS FURTHER RECOMMENDED that the decision be otherwise affirmed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.

---

[11] In fact, plaintiff returned to work as a bus driver on November 29, 2004. (Tr. 28).

[12] *See*, 20 C.F.R. § 416.335.
A social security disability case can be remanded with instructions to make an award only if the record enables the court to determine definitively that the claimant is entitled to benefits. 42 U.S.C. §405(g); *McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 2000) (dissenting opinion)(citations omitted). This case presents such a situation.

Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on November 7, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE